```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
6D GLOBAL TECHNOLOGIES, INC.,       :
                                              15 Civ. 1120 (LGS)(AJP)
            Plaintiff,              :

        -against-                   :   REPORT AND RECOMMENDATION

BEI LU,                             :
            Defendant.
-----------------------------------x
```

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Laura G. Schofield, United States District Judge:**

        Plaintiff 6D Global Technologies Inc. brought this suit against defendant Bei Lu to require Lu to surrender stock in Ctek (the former name of 6D).  (Dkt. No. 1: Compl.)  Lu did not respond to the complaint, Judge Schofield entered a default judgment on July 21, 2015, and referred the case to me for an inquest on damages.  (Dkt. No. 28: 7/21/15 Default Judgment; see also Dkt. No. 24: 6/13/15 Order to Show Cause; Dkt. No. 27: Referral Order.)

        In response to the Court's order, plaintiff 6D stated that it did not request "damages other than [its] attorneys' fees."  (Dkt. No. 33: 6D Inquest Br. at 1.)

        For the reasons set forth below, the Court should enter judgment for 6D against Lu for attorneys' fees of $15,000.

2

**The Complaint and The Agreement Between Ctek (Now 6D) and Lu**[1/]

The complaint alleges that Lu agreed to surrender her shares in Ctek in connection with its merger into 6D, and to transfer those shares to 6D's clearing firm for cancellation. (Dkt. No. 1: Compl. ¶¶ 8-14.) Lu refused to surrender her shares for cancellation. (Compl. ¶¶ 14-15.) The complaint asserted two causes of action: for a declaratory judgment (Compl. ¶¶ 21-26) and for breach of contract (Compl. ¶¶ 27-33). The complaint's Wherefore clause sought, inter alia, "[a]ttorney's fees and costs as provided in the contract(s) executed by Bei Lu." (Compl. Wherefore ¶ iv.)

The contract between the parties is the June 11, 2014 "Divestiture and Exchange Agreement" between Ctek and "Shareholders" including Lu. (Dkt. No. 7: Kang Aff. Ex. A: Divestiture & Exchange Agmt.) The Agreement contains the following indemnification provision:

> Section 6.02. Indemnification by Shareholders. Each Shareholder shall defend, indemnify and hold harmless Ctek . . . from and against any and all Claims, Liabilities and other expenses, including reasonable attorneys' fees and expenses, incurred by any Indemnified Party arising out of or in connection with any misrepresentation, breach of warranty or non-fulfillment of any obligation on the part of any Shareholder under this Agreement.

(Divestiture & Exchange Agmt. ¶ 6.02, emphasis added.) Lu is one of the "Shareholders" and Ctek is now 6D.

---

[1/]  Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

**ANALYSIS**

Lu failed to fulfill the contractual obligation to transfer and cancel shares, thus breaching the Divestiture and Exchange Agreement. Accordingly, while the Agreement could have been better drafted with respect to attorneys' fees, 6D is entitled to reasonable attorneys' fees.

6D originally sought $35,387.50 in legal fees. (Dkt. No. 33: 6D Inquest Br. at 33; see also Dkt. No. 31: Popov 8/5/15 Aff. Exs. A-B.) The Court issued an Order seeking plaintiff's contemporaneous time records for the first $15,000 in fees, and the identity of the lawyer whose billing entries are listed as "JMC." (Dkt. No. 35: 8/6/15 Order.) The Order "also strongly suggest[ed] that plaintiff's counsel review its billing records and determine if [6D] really is entitled to everything it is seeking." (Id.) In response, 6D's counsel reduced the fee request from $35,387.50 to $27,725. (Dkt. No. 37: Bostany 8/11/15 Aff. ¶ 8.)

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[2] Particularly in awarding statutory

---

[2] The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983); see, e.g., Hosking v. New World Mortg. Inc., 570 F. App'x 28, 32 (2d Cir. 2014); Serin v. N. Leasing Sys., Inc., 501 F. App'x 39, 41 (2d Cir. 2012) ("In the federal courts, 'absent unusual circumstances[,] attorneys are required to submit contemporaneous records with their fee applications.'"); Scott v. City of N.Y., 626 F.3d 130, 133 (2d Cir. 2010) ("Carey sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications.").

"On the other hand, New York courts have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of wider trial court discretion in evaluating fee petitions . . . [Where] State law creates the substantive right to attorney's fees, [that] right . . . cannot be deprived by applying the contemporaneous

(continued...)

4

attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations."); Lora v. J.V. Car Wash, Ltc., 11 Civ. 9010, 2015 WL 4496847 at *4 (S.D.N.Y. July 24, 2015)(Peck, M.J.); Lane Crawford LLC v. Kelex Tracing (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), report & rec. adopted, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

---

2/   (...continued)
time records rule adopted in this Circuit." Riordan v. Nationwide Mut. Fire. Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992) (citations omitted); accord, e.g., Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 147-48 (2d Cir. 2014); Serin v. N.E. Leasing Sys., Inc., 501 F. App'x 39, 41 (2d Cir. 2012); Simon v. Sack, 451 F. App'x 14, 17 (2d Cir. 2011); Farb v. Baldwin Union Free Sch. Dist., No. CV 05-0596, 2011 WL 4465051 at *10 (E.D.N.Y. Sept. 26, 2011)("[I]n cases in which the right to attorney fees is governed by state law, such as a contractual attorneys' fees case, New York's more liberal rule, which allows reconstructed records, should apply.").

5

III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[3]

---

[3] Although the Supreme Court's Perdue opinion appeared to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190, which relied on among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit. See, e.g., K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013). In any event, the result would not differ here under either approach.

As the fee applicant, plaintiff "bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Gen. Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[4/]

The Court need not go through this complete analysis, however, because the Bostany firm had a "fixed fee" agreement with 6D to litigate this case for a flat fee of $10,000 (plus a $5,000 success fee). (Dkt. No. 37: Bostany 8/11/15 Aff. Ex. C: Retainer Agmt. ¶ 3; see Dkt. No. 40: Bostany 8/17/15 Aff. Ex. D (8/7/15 billing entry referring to "fixed fee"); Bostany 8/11/15 Aff. ¶ 3 ("the fixed fee of $15,000").) The fact that plaintiff 6D has not paid any amount beyond the first $15,000 -- the bills show all amounts as "Balance Due" (Dkt. No. 31: Popov 8/5/15 Aff. Exs. A-B; Bostany 8/11/15 Aff. Ex. D) -- is further evidence that the $15,000 fixed fee was to cover all work in this case, not just preliminary work.

Even if, as plaintiff's counsel claims, the $15,000 fixed fee only covered work through the time of the Court's March 25, 2015 Order (Dkt. No. 11) that Lu's shares be transferred

---

[4/]   Accord, e.g., Lora v. J.V. Car Wash, Ltc., 2015 WL 4496847 at *5; Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

7

for cancellation (Popov 8/5/15 Aff. ¶¶ 4-6), plaintiff cannot recover most of the attorneys' fees sought, for several reasons.

First, the $15,000 fixed fee is not supported by contemporaneous billing records. Plaintiff's original fee application sought the $15,000 without time records on the ground that that amount was contained in the fee agreement. (Popov 8/5/15 Aff. ¶ 2.) No contemporaneous billing records were attached. (Id.) In response to the Court's Order to submit the "contemporaneous time records supporting the first $15,000 of the fee request" (Dkt. No. 35), Mr. Bostany for the first time "prepared time records using daily emails as a guide to the work that was done" (Bostany 8/11/15 Aff. ¶ 3 & Ex. D). Those reconstructed entries, however, would total $30,800. (Bostany 8/11/15 Aff. Ex. D.) Because this is a contractual claim for attorneys' fees, the more liberal New York rule allowing reconstructed time records applies (see page 3 n.2 above), but "[n]onetheless, the burden is on the attorney claiming such fees to 'keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonablely required." Farb v. Baldwin Union Free Sch. Dist., 2011 WL 4465051 at *10. Because of the obvious deficiencies in Bostany's reconstructed records, the Court will allow $7,500 for the time covered by the fixed fee.

Second, the substantive work of obtaining the order for Lu to transfer the shares for cancellation was all done within the time period covered by the fixed fee. The work after that time (i.e., after March 25, 2015) related to service on Lu and obtaining the default judgment (Popov 8/5/15 Aff. Exs. A-B), which were more administrative or ministerial tasks that do not justify Bostany's billing at $700 an hour, nor associate Popov billing at $350 an hour (or even the $200 that it was reduced to). (Popov 8/5/15 Aff. Exs. A-B; Bostany 8/11/15 Aff. ¶¶ 7-8.) Nor is it clear to the Court that such work should not be covered by the fixed fee agreement.

Third, the Bostany firm has not submitted adequate information to support the billing rates charged by partner Bostany or associate Popov.  Compare, e.g, Lora v. J.V. Car Wash, Ltc., 2015 WL 4496847 at *7 (plaintiff substantiated counsel's hourly rate with affidavits from experienced litigators and extensive case law from this District approving similar hourly rates).

For all of these reasons, the Court in its discretion awards plaintiff a total of $15,000 in attorneys' fees.  That amount is consistent with the fixed fee in the retainer agreement, but recovery of which is reduced to $7,500 for the reasons set forth above, and further consistent with a reduction in the $12,725 for which there are contemporaneous billing entries, but which amounts are inflated by unsupported hourly rates and billing for clerical tasks, making a reduction of the latter to $7,500 appropriate.  See, e.g, Lora v. J.V. Car Wash, Ltc., 2015 WL 4496847 at * 9-10 (legal fees should be reduced for time spent by attorneys completing administrative tasks, for vague billing entries, and where the hours billed are disproportionate to the quantity or quality of the attorneys' work, citing cases).

The Court in its discretion also declines to award "fees on fees," as requested by Bostany's 8/17/15 Affidavit, because the request is excessive.  See, e.g., Warren v. James C. Bender & Assoc., 14 Civ. 5976, 2014 WL 6792060 at *1 (S.D.N.Y. Dec. 3, 2014) (Peck, M.J.) (declining to award fees on fees where application was "too greedy");  A.V.E.L.A., Inc. v. Estate of Monroe, 12 Civ. 4828, 2014 WL 3610902 at *3-4 (S.D.N.Y. July 18, 2014) ("although time spent on a fee application is generally compensable," Court denies such fees where "defendant's submissions have wasted the Court's time" and contained  mathematical errors); Mawere v. Citco Ford Servs., (USA) Inc., 09 Civ. 1342, 2011 WL 6780909 at *2 (S.D.N.Y. 2011) (noting discretionary nature of fees on fees).

## **CONCLUSION**

For the reasons set forth above, the Court should award plaintiff attorneys' fees of $15,000.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura G. Schofield, 40 Foley Square, Room 201, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Schofield (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.

10

1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:       New York, New York
                August 20, 2015

                                      Respectfully submitted,

                                      _____
                                      **Andrew J. Peck**
                                      United States Magistrate Judge

Copies ECF to:       All Counsel
                         Judge Schofield